IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA SIMPKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 09-cv-912-JPG |
| v. ) | |
| ) | |
| CITY OF BELLEVILLE, ILLINOIS, an Illinois ) | |
| municipal corporation, CHRIS MATTINGLY, ) | |
| and TODD KEILBACH, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the defendants' motion for summary judgment (Doc. 16). Plaintiff Debra Simpkins has responded to the motion (Doc. 19). For the following reasons, the Court will deny the motion.

**I.   Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

**II.   Facts**

On May 6, 2008, defendants Chris Mattingly and Todd Keilbach, both employees of the Belleville Police Department, were dispatched to an alleged fight in progress which was drawing a

crowd. Officer Dana Yoakum also reported to the scene. The gathering was in front of the house of plaintiff Simpkins' sister. When the officers arrived on the scene, the alleged fighters fled, and the officers were able to disperse the remainder of the crowd except for four young people who remained in the road. One of those young people was Simpkins' nephew. Keilbach issued citations to the four young people when they refused to move out of the road so traffic could pass.

While Keilbach was preparing the citations, Simpkins, an officer with the East St. Louis Police Department, arrived in her car. The parties disagreed about the events immediately following her arrival. Mattingly and Keilbach state that Simpkins became loud and belligerent, accused them of harassing the four young people because they were black, and said she would "have their jobs" and that they would regret writing the citations. According to Mattingly and Keilbach, Simpkins refused to step aside so they could finish writing the citations and instead continued to assert her belief that the four young people had a right to congregate where they had been. The officers were able to complete the citations within ten to fifteen minutes of when Simpkins arrived but claim they were delayed by her behavior.

Simpkins tells a different story. She states that when she arrived, she told Yoakum she was also a police officer. After Keilbach finished issuing the citations, Simpkins asked Mattingly whether the citations were issued because the young people were black but insists she was neither loud nor belligerent and did not interfere in any way with the officers' issuing the citations. Simpkins asserts that later Mattingly threatened to arrest her for being part of the crowd he was trying to disperse. All parties agree there was no physical contact between Simpkins and Mattingly or Keilbach.

After the incident, Simpkins accompanied her sister to the Belleville police station so her

sister could file a complaint against Mattingly for his treatment of her son, Simpkins' nephew.

The following day, Mattingly and Keilbach issued a citation to Simpkins for obstructing a peace officer by failing to obey an officer's lawful order to disperse and by becoming loud and disruptive to police officers while they were attempting to disperse a crowd that had been involved in a physical fight. They asked Simpson to report to the station for arrest, and she did so voluntarily. At a bench trial on August 30, 2009, the citation was dismissed and a misdemeanor information was filed charging Simpkins with obstructing Mattingly by delaying and hindering him from dispersing a crowd after a fight by approaching law enforcement officers, becoming loud and disruptive and failing to obey an order to disperse. As a result, Simpkins was disciplined by the East St. Louis Police Department by, among other things, being ordered to take substantial leave without pay.

The Honorable Stephen Rice found Simpkins not guilty of the charge. In his written order, Judge Rice found the State of Illinois had not proved beyond a reasonable doubt that Simpkins had obstructed justice by becoming belligerent in her language or by remaining in place after a police officer ordered her to move. *State v. Simpkins*, No. 2009-CM-5876, slip op. at 5 (Ill. 20th Cir. Ct. Sept. 22, 2009). Immediately following his conclusion that the State had not proved its case beyond a reasonable doubt, Judge Rice stated, "This determination in no way suggests that Belleville police lacked probable cause in issuing the citation." *Id.* at 6. His order further indicates he believed the State's evidence that Simpkins had become belligerent:

> The Court certainly does not condone the conduct of defendant [Simpkins] in this case. All reasonable people recognize that a law enforcement officer's duties are difficult and dangerous. Police officers are expected to be thick-skinned, to accept a certain amount of "guff" from citizens from time to time in the exercise of their duties. They are often called upon to exercise restraint in the face of belligerent and uncivil behavior. It would be better if it were not so. In this case, the belligerent

3

> behavior was committed by a fellow law enforcement officer who should know better. The Chief of Police is right to be offended by the conduct of an officer from a sister department. It was clear from information contained in the record that defendant faced and continues to face the consequences of her actions as an officer of the law in disciplinary proceedings in her own department.

*Id.* at 7. The order makes no specific findings about the nature of Simpkins' belligerence.

Simpkins filed this lawsuit in October 2009. In the Second Amended Complaint, she alleges a state law cause of action for malicious prosecution against each defendant and a federal cause of action under 42 U.S.C. § 1983 against Mattingly and Keilbach for violation of her Fourth Amendment right not to be arrested without probable cause. The defendants ask the Court for summary judgment based on qualified immunity. Specifically, they believe Judge Rice's order collaterally estops Simpkins from establishing a violation of her constitutional right to be free from arrest without probable cause and that in light of that finding, Simpkins cannot establish a constitutional violation.

**III.   Analysis**

Mattingly and Keilbach are not entitled to summary judgment on the basis of qualified immunity because Judge Rice's order does not conclusively establish that Simpkins was belligerent and does not demonstrate that she cannot succeed on her Fourth Amendment false arrest claim.

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). The qualified immunity test has two prongs: (1) whether the facts, viewed in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated

a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 129 S. Ct. at 815-16; *see Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). While it is often beneficial to first inquire into whether the plaintiff can show a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case. *Pearson*, 129 S. Ct. at 818.

Simpkins claims that Mattingly and Keilbach violated her Fourth Amendment right to be free from arrest without probable cause. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *accord Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000).

The defendants argue that Simpkins cannot show a constitutional violation because Judge Rice's order collaterally estops Simpkins from asserting a lack of probable cause for her arrest. Therefore, they maintain, she cannot demonstrate a constitutional violation and they are entitled to qualified immunity based on the first prong of the test. In support of their position, they point to Judge Rice's finding that Simpkins was belligerent as an unchallengeable finding showing that the defendants had probable cause to arrest her for obstructing a police officer or for disorderly conduct. To the extent that finding is *dicta*, they argue is it judicial *dicta* entitled to conclusive weight.

  A. <u>Applicability of Collateral Estoppel</u>

The equitable doctrine of collateral estoppel, also called issue preclusion, provides that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that

determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979); *accord Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000); *Talarico v. Dunlap*, 685 N.E.2d 325, 328 (Ill. 1997). To determine the preclusive effect of a prior state court finding in a later federal case, the federal court looks to state law and the preclusive effect the state court finding would have on another state court. *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009); *see* 28 U.S.C. § 1738 (state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."). Because Judge Rice's judgment was an Illinois state court ruling, the Court looks to Illinois law to determine the preclusive effects of his findings.

      Under Illinois law, collateral estoppel can apply on an issue if three threshold circumstances exist:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Talarico*, 685 N.E.2d at 328 (citing *Illinois State Chamber of Commerce v. Pollution Control Bd.*, 398 N.E.2d 9, 11-12 (1979)). In addition, for collateral estoppel to apply, the prior decision on the issue must have been necessary for the prior judgment, the issue must have been actually litigated in the prior suit, and application of collateral estoppel must clearly not be unfair to the party sought to be estopped. *Talarico*, 685 N.E.2d at 328. Furthermore, applying collateral estoppel may not be appropriate if the party sought to be bound by the prior finding did not have a full and fair opportunity or an incentive to vigorously litigate the issue in the prior proceeding. *Id.* It is important to remember that under Illinois law, "[c]ollateral estoppel is a flexible doctrine which

6

defies rigid or mechanical application." *Id.* at 329-30.

Collateral estoppel can bar a plaintiff from relitigating in a § 1983 suit an issue that was decided against him in earlier state proceedings. *See Allen*, 449 U.S. at 97-105; *see also Talarico*, 685 N.E.2d at 328-29 ("It is generally accepted that a criminal conviction collaterally estops a defendant from contesting in a subsequent civil proceeding the facts established and the issues decided in the criminal proceeding."). That is precisely what the defendants assert in this case.

Here, the threshold requirements for application of collateral estoppel to the issue of whether Simpkins was belligerent are met. The issue was decided in Judge Rice's order[1]; his concluding paragraph makes clear that he believes "belligerent behavior was committed by a fellow law enforcement officer who should have known better."[2] This finding was made in a final judgment on the merits of the criminal case after a full bench trial, and it is being asserted now to estop Simpkins, who was clearly a party to the prior adjudication, from making contrary assertions. In addition, Simpkins' behavior at the scene of the incident was actually litigated in the criminal proceeding. Evidence from numerous witnesses, including Simpkins herself, centered on her actions. Simpkins had a full and fair opportunity to litigate the question, and because she was

---

[1]The copy of Judge Rice's order attached to the defendants' motion is not certified according to the requirements of 28 U.S.C. § 1738. In order to have preclusive effect in a federal court, a state court order must satisfy those requirements. This shortcoming is immaterial, however, in light of the Court's conclusion today that the order does not bar Simpkins from relitigating her behavior.

[2]To the extent the defendants' motion may be construed to assert that Judge Rice made a probable cause determination that estops Simpkins in this case, that argument must be rejected. Judge Rice made no such finding. His statement that his decision "in no way suggests that the Belleville police lacked probable cause in issuing the citation" cannot be read as an affirmative finding that probable cause existed. The Court construes the defendants' argument to assert collateral estoppel solely on the factual finding that Simpkins was belligerent, which they believe establishes that they had probable cause to arrest her.

7

facing criminal charges, she certainly had an incentive to vigorously defend herself.

Questions remain, however, whether Judge Rice's finding that Simpkins was belligerent was necessary to his judgment acquitting her and whether it would be unfair to hold her to this finding when she had no opportunity to appeal it.

1. <u>Necessity</u>

Judge Rice's finding that Simpkins was belligerent is not necessary to the judgment of acquittal. A particular finding is not "necessary" to a judgment and will not have preclusive effect in a subsequent case if the judgment did not depend on the finding. *Hunter v. Troup*, 146 N.E. 321, 322 (Ill. 1925). In *Hunter*, the Illinois Supreme Court stated,

> A finding of facts not necessary to uphold a former judgment does not conclude the parties. Even though a decree in express terms professes to find a particular fact, yet if such fact was immaterial and the controversy did not turn upon it, the decree will not conclude the parties in reference to that fact.

*Id.*; *see, e.g., O-Kay Shoes, Inc. v. Rosewell*, 472 N.E.2d 883, 885 (Ill. App. Ct. 1984); *Bourns, Inc. v. Allen-Bradley Co.*, 480 F.2d 123, 125 (7th Cir. 1973).

Here, Judge Rice's finding that Simpkins had been belligerent was not necessary to uphold the judgment of acquittal. If Judge Rice had found otherwise – that Simpkins *had not* been belligerent – the result of the case would have been the same – a judgment of acquittal. Therefore, under *Hunter*, because the disposition of the case did not turn on the finding that Simpkins was belligerent, that fact is not necessary to the judgment and can have no preclusive effect.

The defendants urge the Court to give preclusive effect to Judge Rice's finding anyway on the grounds that it is judicial *dicta* and is entitled to much weight. Where a pronouncement by a court is not necessary to the disposition of the case, as is the situation in this case, the pronouncement is *dicta*. *People v. Williams*, 788 N.E.2d 1126, 1136 (Ill. 2003); *Hawes v. Luhr*

*Bros., Inc.*, 816 N.E.2d 345, 349 (Ill. 2004). *Dicta* comes in two forms: *obiter* and judicial. *Williams*, 788 N.E.2d at 1136. *Obiter* dicta are comments by a court uttered as an aside and are generally not binding or precedential. *Lebron v. Gottlieb Memorial Hosp.*, Nos. 105741 & 105745, 2010 WL 375190, at *8 (Ill. Feb. 4, 2010). Judicial *dicta*, on the other hand, are comments that involve an issue briefed and argued by the parties, although they are not necessary to the case. *Williams*, 788 N.E.2d at 1136 (citing *Black's Law Dictionary* 465 (7th ed. 1999)). Nevertheless, judicial *dicta* are entitled to much weight. *Lebron*, 2010 WL 375190, at *8 (citing *Exelon Corp. v. Dep't of Revenue*, 917 N.E.2d 899, 901 (Ill. 2009)).

The defendants have cited no cases in which a party has been allowed to rely on judicial *dicta* to circumvent the collateral estoppel doctrine's requirement that the prior finding have been necessary to the prior judgment. In its independent research, the Court has found only one Illinois case remotely touching on the point: *Bernabei v. County of La Salle*, 630 N.E.2d 538, 541 (Ill. App. Ct. 1994). In that case, the Court found that each of three alternative grounds for a prior judgment had preclusive effect despite the fact that, because the grounds were alternative, the prior judgment would have been no different absent any one ground. *Id.* at 540-41. *Bernabei* is distinguishable from this case, which does not seek to invoke collateral estoppel for one of several alternative bases for a prior judgment. In the absence of authority applying collateral estoppel on the basis of judicial *dicta*, the Court declines to do so here.

  2.  <u>Fairness</u>

It would be unfair to collaterally estop Simpkins from relitigating whether she was belligerent because, in light of her victory in the criminal case, she did not have an opportunity to challenge that factual finding by appealing the state court judgment. This is true even if the state

court judgment would likely have been affirmed because it turned on credibility findings.

The Illinois Supreme Court has held that collateral estoppel should not apply to a pretrial finding in a criminal case where the defendant is ultimately acquitted and therefore has no opportunity to challenge the pretrial finding on appellate review.  *See People v. Mordican*, 356 N.E.2d 71, 74 (Ill. 1976).  In *Mordican*, the defendant had been charged with two separate crimes in two separate cases but involving the same evidence.  *Id.* at 72.  In the first case, the court held a suppression hearing, found that there was probable cause for the search in question and declined to suppress the fruits of that search.  *Id.*  The defendant was nevertheless acquitted of that charge.  *Id.* In the second case, the court held the ruling in the first suppression hearing collaterally estopped the defendant from seeking suppression of the same evidence in the second case.  *Id.* at 73.  The defendant was convicted in that case, but the Illinois Appellate Court reversed on the grounds that collateral estoppel should not have applied.  *Id.* at 72.

The Illinois Supreme Court agreed, finding that the case contained the "peculiar circumstance" that "because of his acquittal, the defendant had no opportunity to obtain a review of the correctness of the ruling made in his earlier trial as to the validity of the search."  *Id.* at 73;  *see also People v. Hopkins*, 284 N.E.2d 283, 285 (Ill. 1972) (recognizing the "peculiar circumstance" where the defendant is unable to appeal a prior ruling because he was acquitted).  In such circumstances, the Court found the application of collateral estoppel to be improper because it would essentially insulate the prior ruling from appellate review.  *Mordican*, 356 N.E.2d at 74.  The continuing validity of *Mordican* was confirmed in *People v. Enis*, 645 N.E.2d 856, 865 (Ill. 1994) ("Special circumstances have been found where the defendant was acquitted of certain charges, thereby precluding him from seeking appellate review of the trial court's rulings."), and *People v.*

*Sutherland*, 860 N.E.2d 178, 197 (Ill. 2006) ("Special circumstances have been found where a defendant is acquitted and thereby denied the opportunity to appeal the trial court's ruling. In such a case, collateral estoppel will not bar relitigation of the trial court's ruling in a subsequent proceeding.").

Some federal district courts in Illinois have rejected *Mordican* in the civil context where the prior decision turned on credibility determinations. *See, e.g., Thompson v. Mueller*, 976 F. Supp. 762, 763 (N.D. Ill. 1997) (prior denial of motion to quash arrest for lack of probable cause in case where defendant was acquitted barred probable cause challenge in subsequent § 1983 suit). For example, *Thompson* distinguishes *Mordican* on the grounds that it involved two criminal proceedings, not a subsequent civil proceeding as was the case in *Thompson*. *Id.* at 766. It further held that applying collateral estoppel would not be unfair where the prior ruling was thoroughly litigated and was unlikely to be reversed on appeal because it relied on credibility determinations. *Id.* Therefore, they reason, applying collateral estoppel would not be unfair because the prior decision is highly likely to be right.

Others district courts in Illinois have followed *Mordican*. *See, e.g., Lyttle v. Killackey*, 546 F. Supp. 2d 583, 589 (N.D. Ill. 2008) (ruling on pretrial motion to dismiss in criminal case where defendant was acquitted does not collaterally estop subsequent challenge in § 1983 case); *Toro v. Gainer*, 370 F. Supp. 2d 736, 739-40 (N.D. Ill. 2005) (disagreeing with *Thompson*'s application of collateral estoppel doctrine). *Lyttle* reasoned that where the prior decision was based on a legal issue rather than a credibility determination, applying collateral estoppel would be unfair. *See Lyttle*, 546 F. Supp. 2d at 589 n. 3.

The Court of Appeals for the Seventh Circuit agrees with the latter group of district courts

that *Mordican* continues to be vital. *Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006). *Sornberger* decided that, if presented with the issue, the Illinois Supreme Court would apply *Mordican* in § 1983 actions to bar the use of collateral estoppel against a party who had no chance to appeal a prior finding. *Id.* at 1022. In that case, the Court of Appeals dismissed the significance of whether a decision was likely to be affirmed because it rested on a credibility determination and instead focused on the unfairness that could result from the lack of appealability of the prior finding. *Id.*

Under the reasoning of *Sornberger*, this Court joins the group of courts that finds vitality in *Mordican* even in civil cases and even when the prior determination rests on credibility findings. The unfairness that would result from enforcing a finding that could not be appealed is unacceptable. In this particular case, Simpkins would be stuck with an unnecessary pronouncement that appears to be little more than general chastisement of a winning party, not a specific factual finding of her precise behavior.

Because Judge Rice's finding that Simpkins was belligerent was not necessary to his judgment and would result in an unfair application of a finding Simpkins did not have the ability to challenge on appeal, the Court will not bar Simpkins from challenging the existence of probable cause for her arrest.

    B.    <u>Qualified Immunity</u>

In the absence of a conclusive determination that Simpkins was belligerent, there is a genuine issue of material fact regarding her conduct and about whether, by arresting her, defendants

Mattingly and Keilbach[3] violated her clearly established Fourth Amendment right to be free from unreasonable arrest. *See, e.g., Payne v. Pauley*, 337 F.3d 767, 777-78 (7th Cir. 2003). Thus, they are not entitled to qualified immunity on Simpkins' § 1983 claims.

      C.      <u>Malicious Prosecution Claims</u>

Similarly, while there is a genuine issues of material fact regarding Simpkins' conduct, the defendants are not entitled to summary judgment on her state law malicious prosecution claims.

**IV.    Conclusion**

For the foregoing reasons, the Court **DENIES** the defendants' motion for summary judgment (Doc. 16).

**IT IS SO ORDERED.**
**DATED:  May 7, 2010**

                                                            <u>s/ J. Phil Gilbert</u>
                                                           **J. Phil Gilbert**
                                                           **District Judge**

---

[3]Keilbach mentions in passing that he was not involved in issuing the citation to Simpkins and therefore cannot be liable for her arrest. However, his name is on the citation. This is sufficient to show on summary judgment that he was involved in issuing the citation.